## No. 26623

**Molly T. Meyer and John C. Meyer v. Henry Putnam, County Clerk of Boulder County, and Betty Chronic, Assistant County Clerk of Boulder County, State of Colorado**

(534 P.2d 622)

Decided April 21, 1975.

William M. Cohen, for plaintiff-appellants.

John P. Moore, Attorney General, John E. Bush, Deputy,

Charles M. Elliott, Assistant, for defendants-appellees.

*En Banc.*

MR. JUSTICE DAY delivered the opinion of the Court.

In October 1973, John C. Meyer attempted to register to vote in a Boulder municipal election. He was asked by the registration clerk to provide information concerning his profession, business, employment, or principal activity. Section 1-2-206(1)(f), C.R.S. 1973. When Meyer refused to divulge that information, the clerk refused to register him. Accordingly, the defendant Putnam, county clerk of Boulder County, refused to allow Meyer to vote in the election.

Meyer was willing to provide information pertaining to age, residence and citizenship. Section 1-2-101(1), C.R.S. 1973. He was also willing to sign the oath of electors, which only requires that he swear or affirm under penalty of perjury to that same information. Section 1-2-207, C.R.S. 1973. Thus, except for his unwillingness to disclose his occupation, Meyer was qualified to vote.

At a trial to the court, the judge held that disclosure of the disputed information was a mandatory condition precedent to voting. Meyer appeals. We reverse, and hold that the requirement that qualified electors disclose their profession, business, employment or principal activity is directory only. Failure to disclose does not disenfranchise an otherwise qualified voter.

The issue in this case is essentially the same as that found in *Meyer v. Putnam,* 186 Colo. 132, 526 P.2d 139 (1974) (hereinafter *"Meyer I"*). There we held that registration requirements which go beyond determining whether a registrant is a qualified elector most likely are directory, not mandatory. In *Meyer I,* the disputed information was a social security number; here it is occupation. The requirement to furnish information in both areas is found in the same section 1-2-206, C.R.S. 1973. Some distinctions do exist between the two, but they are not of sufficient force alone to require a different result. Therefore, the holding in *Meyer I* is controlling.

Section 1-2-101(1) sets out the factors which go to the merits of an election. They include:

(a) attaining the age of eighteen years;

(b) United States citizenship;

(c) a 32-day residency in both this state and in the registering precinct.

There are other mandatory disclosure requirements necessary to secure the purity of elections and to prevent voter fraud. *Colo. Const.*, Art. VII, Sec. 11. Once these qualifications are satisfied, a person shall be entitled to register and vote in all general, primary and special elections. There is no showing how an initial inquiry as to occupation preserves the purity of elections. Testimony revealed it does not.

■ The Colorado Election Code of 1963 asks further questions of the elector. Section 1-2-206. It is perfectly proper for the legislature to ask for other information to protect the purity of the ballot. However, there must be a compelling state interest if failure to comply with this additional information is to result in restriction of an individual's right to the free exercise of suffrage.

People today are very mobile and often change occupations. They retire, become ill or are laid off. Conceivably, it might be in the state's interest to follow these changes. But there was no such pursuit in Boulder or in the state for that matter. The record shows that the requested information on occupations is never updated. For example, if a woman indicated that she was a housewife at initial registration but three years later became a construction engineer, the registration clerk had no means to require her to notify the records office of that change. A law student registers, becomes a lawyer and finally Governor. The registration never reveals the change.

At trial, assistant county clerk Chronic testified that the occupations information was sometimes helpful in matching people when there were several with the same name. However, she admitted that was predicated only on the assumption that there was no change in occupation in the meantime — a fact which the registration office would not know and could not obtain since no update was kept or required by law.

Finally, although the assistant county clerk said that it was helpful to have occupations information in order to locate a regis-

trant during office hours at his place of employment, in point of fact the voter registration sheets do not provide any place for obtaining a registrant's office address or telephone number — merely the name of the occupation such as typist, lawyer, plumber, and other vocations of a variegated nature.

Thus the testimony revealed no compelling state interest to mandate compliance with disclosure of one's occupation as a condition precedent to voting. The information is not important, does not affect the outcome of an election, and since there is no requirement that it be kept current it cannot insure the purity of the ballot or prevent voter fraud.

■ Section 1-2-206(1)(f), which requires the disclosure of an applicant's business, profession, employment or principal activity, is directory only. Refusal by an otherwise qualified elector to provide that information does not authorize the county clerk to refuse to register such person. *Meyer I, supra.*

The appellees concede that *Meyer I* is controlling — if it remains the law. The essential thrust of the state's argument is to persuade this court to reconsider that holding. Upon reading the briefs and giving due thought to arguments, we decline to overrule *Meyer I.*

The judgment is reversed.